**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| ROBERT N. HERRERA, individually, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br>vs.<br><br>APRIA HEALTHCARE LLC,<br><br>          Defendant. | Case No._____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff ROBERT N. HERRERA ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this Class Action Complaint against APRIA HEALTHCARE LLC ("Defendant" or "Apria"), and alleges upon personal knowledge as to his own actions and the investigation of their counsel, and upon information and belief as to all other matters, as follows:

## I.       INTRODUCTION

1.       Plaintiff brings this class action against Defendant on behalf of himself and all other persons harmed by the Data Breach that Defendant announced in or around May 2023 (the "Data Breach").

2.       Defendant Apria is a provider of home medical equipment for sleep apnea and also provides pharmaceutical services and equipment and supplied for wound care and diabetes.  The company is headquartered in Indianapolis, Indiana, serving medical providers and patients across the United States in hundreds of locations.[1] Apria HealthCare employs approximately 6,500 people and served more than 2 million patients in 2021 alone.[2]

---

[1] **www.apria.com** (last accessed on June 6, 2023)
[2] *Id.*

3.      Despite marketing itself as a safe repository for sensitive information, Defendant failed to take basic precautions designed to keep that information secure. According to Defendant, between April 5, 2019 and May 7, 2019 and again between August 27, 2021 and October 10, 2021, hackers gained access to the Defendant's network that it uses to store a wide range of sensitive personal identification information and personal health information on its customers including personal, medical, health insurance, financial, and Social Security numbers, among other things.[3] The breach impacted more than 1.8 million individuals nationwide.[4]

4.      In May 2023, Defendant began sending letters to affected individuals notifying them that their information was compromised. In those Data Breach notification letters, Defendant admits that information in its network was accessed by unauthorized individuals. The particularly sensitive nature of the exposed data includes medical information, which means Plaintiff and Class Members have suffered irreparable harm and are subject to an increased risk of identity theft for the foreseeable future.

5.      Defendant understands that it is required by law to protect such information. In its Privacy Policy and HIPAA Privacy Notice, Apria promises to its patients and customers it maintains "commercially reasonable security measures to protect the Personally Identifiable Information [Apria] collect[s] and store[s] from loss, misuse, destruction, or unauthorized access."[5]

---

[3] https://www.hipaajournal.com/apria-healthcare-breach-affects-up-to-1-8-million-individuals/ (last accessed on June 13, 2023).
[4] *Id.*
[5] https://www.apria.com/privacy-policy#:~:text=We%20do%20not%20disclose%20personal,for%20their%20direct%20marketing%20purposes (last accessed on June 13, 2023).

6.      The Data Breach was the result of Defendant's failure to implement reasonable policies and procedures to protect the security of the personally identifiable information (PII) and protected health information (PHI) it collected as part of its business.

7.      Plaintiff and Class Members face an ongoing and lifetime risk of identity theft, which is heightened by the exposure of their medical information.

8.      Plaintiff and Class Members have suffered concrete injury as a result of Defendant's conduct. These injuries include: (i) fraudulent misuse of the stolen PII and PHI that is traceable to this Data Breach; (ii) lost or diminished value of PII and PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII and PHI; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (v) the present and immediate risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI.

## II.  **PARTIES**

9.      Plaintiff Robert N. Herrera is a citizen of California and resides in Los Angeles County, California. In June 2023, he received a Data Breach notification from Defendant informing him that his PII and PHI were compromised in the Data Breach. As a consequence of the Data Breach, Plaintiff Herrera has been forced to and will continue to invest significant time monitoring his accounts to detect and reduce the consequences of likely identity fraud. Plaintiff Herrera is concerned that he will have to freeze his credit reports to ensure that no one can take out credit in his name. Given the highly sensitive nature of the information stolen, Plaintiff

Herrera suffers present, imminent, and impending risk of injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by his personal and financial information being placed in the hands of criminals.

10.     Defendant Apria Healthcare LLC ("Defendant" or "Apria") is a Delaware corporation headquartered in Indianapolis, Indiana and located at 7353 Company Drive, Indianapolis, Indiana 46237.

### III.   JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) and (3) because this is a class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant, including Plaintiff Herrera.

12.     This Court has personal jurisdiction over the Defendant because Defendant has its principal place of business within this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because Defendant's headquarters is in this District, and it conducts much of its business throughout this District.

### IV.   FACTUAL ALLEGATIONS

***Background***

14.     Defendant Apria a provider of home medical equipment for sleep apnea and also provides pharmaceutical services and equipment and supplies for wound care and diabetes to millions of customers across the United States.

15.     Plaintiff and Class Members relied on this sophisticated Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their sensitive PII and PHI.

16.     Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII and PHI from involuntary disclosure to third parties.

### ***The Data Breach***

17.     Between April 5, 2019 and May 7, 2019 and again between August 27, 2021 and October 10, 2021, unauthorized third-party cybercriminals infiltrated the network that Apria uses to store sensitive personal information (including PII and PHI) of its customers (the "Data Breach"). These cybercriminals went undetected as they accessed PII and PHI over the course of several months during periods in 2019 and 2021.

18.     On or about late May 2023, Defendant transmitted to Plaintiff and Class Members the notice letter (the "Data Breach Notice") informing them of the Data Breach in which their PII and PHI was compromised.[6]  Apria waited, in some instances, **more than four years after** the Data Breach to notify some victims that their PII and PHI was disclosed to cybercriminals.

19.     The Data Breach Notice stated that "an unauthorized third party accessed systems which contained personal information from April 5, 2019 to May 7, 2019 and from August 27, 2021 to October 10, 2021."[7] The notice confirmed that some "files were confirmed to have been accessed…"[8] This means that not only did the cybercriminals view and access the PII and PHI without authorization, but they also likely removed Plaintiff's and Class Members' PII and PHI.

---

[6] *See* https://oag.ca.gov/ecrime/databreach/reports/sb24-567100 (last accessed on June 13, 2023).
[7] *Id.*
[8] *Id.*

In the Data Breach, these criminals acquired the most damaging kind of PII and PHI that can be exposed to unauthorized third parties, including, but in no way limited to, sensitive medical information.

20.     Due to Defendant's inadequate and insufficient data security measures, Plaintiff and Class Members now face an increased risk of fraud and identity theft and must live with that threat forever. Plaintiff believes his PII and PHI was both stolen in the Data Breach and is still in the hands of the cybercriminal "hackers." Plaintiff further believes his PII and PHI has already been sold on the Dark Web and downloaded following the Data Breach, as that is the *modus operandi* of cybercriminals who perpetrate cyberattacks of the type that occurred here.

21.     Defendant had obligations to Plaintiff and Class Members to safeguard their PII and PHI and to protect it from unauthorized access and disclosure.

22.     Plaintiff and Class Members provided their PII and PHI to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

23.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches of major companies preceding the date of the Data Breach.

24.     Defendant knew or should have known that these attacks were common and foreseeable. In 2022, there were 1,802 data breaches, nearly eclipsing 2021's record wherein 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68 percent increase from 2020.[9] The 330 reported breaches reported in 2021 exposed

---

[9]     *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6 (last accessed on June 13, 2023).

nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[10]

25.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities . . . are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[11]

26.     The increase in such attacks, and the resulting risk of future attacks, was widely known to the public and to anyone in the Defendant's industry, including Defendant.

***Defendant Did Not Use Reasonable Security Procedures***

27.     Despite this knowledge, Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, non-encrypted information it was maintaining for Plaintiff and Class Members, causing Plaintiff's and Class Members' PII and PHI to be exposed.

28.     To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

---

[10]    See *Data Breaches Hit Lots More People in 2022* (Jan. 25, 2023) https://www.cnet.com/tech/services-and-software/data-breaches-hit-lots-more-people-in-2022/ (last accessed on June 13, 2023).
[11]    FBI, Secret Service Warn of Targeted, Law360 (Nov. 18, 2019), *available at*: https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last accessed on June 13, 2023).

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

29.     To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic.[12]

30.     To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit
- Remove privileged credentials

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise.

---

[12] *See* Cybersecurity & Infrastructure Security Agency, *Protecting Against Ransomware* (original release date Apr. 11, 2019), *available at:* https://www.cisa.gov/news-events/news/protecting-against-ransomware (last accessed on June 13, 2023).

**Include IT Pros in security discussions**

-   Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely.

**Build credential hygiene**

-   Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords.

**Apply principle of least-privilege**

-   Monitor for adversarial activities
-   Hunt for brute force attempts
-   Monitor for cleanup of Event Logs
-   Analyze logon events

**Harden infrastructure**

-   Use Windows Defender Firewall
-   Enable tamper protection
-   Enable cloud-delivered protection
-   Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[13]

31.    Given that Defendant was storing the PII and PHI of Plaintiff and Class Members, Defendant could and should have implemented all the above measures to prevent and detect cyber-attacks.

32.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent "hacking" attacks, resulting in the Data Breach and the exposure of the PII and PHI of an undisclosed amount of current and former consumers, including Plaintiff and Class Members.

---

[13] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last accessed on June 13, 2023).

*Securing PII and PHI and Preventing Breaches*

33.     Defendant could have prevented this Data Breach by properly securing and encrypting the PII and PHI of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data that was no longer useful, especially outdated data.

34.     Defendant's negligence in safeguarding the PII and PHI of Plaintiff and Class Members was exacerbated by the repeated warnings and alerts directed to businesses to protect and secure sensitive data.

35.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII and PHI of Plaintiff and Class Members from being compromised.

*Defendant Failed to Comply with FTC Guidelines*

36.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

37.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[14] The guidelines also recommend that businesses use an intrusion detection

---

[14] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed on June 13, 2023).

system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[15]

38.     The FTC further recommends that companies not maintain PII and PHI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

39.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

40.     Defendant failed to properly implement basic data security practices.

41.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

42.     Defendant was always fully aware of its obligation to protect the PII and PHI of Plaintiff and Class Members. Defendant was also aware of the significant repercussions that would result from their failure to do so.

---

[15] *Id.*

*Defendant Failed to Comply with Industry Standards*

43.     Several best practices have been identified that at a minimum should be implemented by companies like Defendant, including but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices.

44.     Other best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

45.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

46.     These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards thereby opening the door to the cyber incident and causing the Data Breach.

*Value of Personally Identifiable Information*

47.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[16] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[17]

48.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Personal Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[18] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[19] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[20]

49.     Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider,

---

[16] 17 C.F.R. § 248.201 (2013).

[17] *Id*.

[18] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed on June 13, 2023).

[19] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed on June 13, 2023).

[20] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed on June 13, 2023).

or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."

50.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

51.     According to account monitoring company LogDog, medical data sells for $50 and up on the Dark Web.[21]

52.     Moreover, the fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and between when PII and PHI is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[22]

///

///

///

---

[21] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (last accessed on June 13, 2023).

[22] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed on June 13, 2023).

53.     The PII and PHI stolen in the Data Breach have significant value, as PII and PHI is a valuable property right. [23] Sensitive PII can sell for as much as $363 per record according to the Infosec Institute.[24]

54.     There is also an active and robust legitimate marketplace for PII. In 2019, the data brokering industry was worth roughly $200 billion.[25] In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker, who in turn aggregates the information and provides it to marketers or app developers.[26] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[27]

55.     As a result of the Data Breach, Plaintiff's and Class Members' PII and PHI, which has an inherent market value in both legitimate and black markets, has been damaged and diminished by its unauthorized release to third party actors, to whom it holds significant value. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII and PHI are now readily available, and the rarity of Plaintiff's and Class Members' PII and PHI has been lost, thereby causing additional loss of value.

---

[23] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3–4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted)).

[24] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, INFOSEC (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last accessed on June 13, 2023).

[25] David Lazarus, *Shadowy Data Brokers Make the Most of Their Invisibility Cloak* (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last accessed on June 13, 2023, 2023).

[26] *See, e.g.*, https://datacoup.com/; https://worlddataexchange.com/about.

[27] Computer & Mobile Panel, NIELSEN, *available at* https://computermobilepanel.nielsen.com/ ui/US/en/sdp/landing (last accessed on June 13, 2023).

56.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiff and Class Members, including personal, medical, health insurance information, financial information, and Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system and network was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

57.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

58.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s) and computer network, amounting to potentially millions of individuals' detailed PII and PHI, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

59.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII and PHI of Plaintiff and Class Members. The ramifications of Defendant's failure to keep secure the PII and PHI of Plaintiff and Class Members are long lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years.

## V.   PLAINTIFF-SPECIFIC ALLEGATIONS

### *Plaintiff Robert N. Herrera's Experience*

60.     Plaintiff Herrera used Defendant's services and devices for a medical condition. As a condition to receiving services from Defendant, Plaintiff Herrera provided his PII and PHI to Defendant which was then entered into Defendant's database and maintained by Defendant.

61. Plaintiff greatly values his privacy and PII and PHI, especially when receiving health or health insurance services. Prior to the Data Breach, Plaintiff took reasonable steps to maintain the confidentiality of his PII and PHI.

62. Plaintiff received a letter dated June 6, 2023 from Defendant concerning the Data Breach. The letter stated that unauthorized actors gained access to files on Defendant's computer network that contained his name, date of birth, medical device descriptions, patient account number, patient address, dates of service, email and telephone number.

63. Since learning of the Data Breach, Plaintiff has spent additional time reviewing his bank statements, medical information and statements, and credit cards. Since the date of the breach, he has spent approximately two to four hours to date reviewing his accounts and credit reports.

64. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has not been forthright with information about the Data Breach.

65. Plaintiff plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing his depository, credit, and other accounts for any unauthorized activity.

66. Additionally, Plaintiff is very careful about sharing his PII and PHI. He has never knowingly transmitted unencrypted PII or PHI over the internet or any other unsecured source.

67. Plaintiff stores any documents containing his PII and PHI in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

68.     Plaintiff has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff's Injuries and Damages***

69.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members are presently experiencing and will continue experiencing actual harm from fraud and identity theft.

70.     Plaintiff and Class Members are presently experiencing substantial risk of out-of-pocket fraud losses, such as loans opened in their names, tax return fraud, utility and medical bills opened in their names, and similar identity theft.

71.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII and PHI as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and Class Members.

72.     Plaintiff and Class Members are also incurring and may continue incurring out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

73.     Plaintiff and Class Members also suffered a loss of value of their PII and PHI when it was acquired by the cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

74.     Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price Plaintiff and Class Members paid to

Defendant and their affiliates was intended to be used by Defendant to fund adequate security of Defendant's computer property and protect Plaintiff's and Class Members' PII and PHI. Thus, Plaintiff and Class Members did not get what they paid for.

75.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time monitoring their financial accounts and records for misuse.

76.     Plaintiff and Class Members have suffered actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

      a.   Finding fraudulent loans, insurance claims, tax returns, and/or government benefit claims;

      b.   Purchasing credit monitoring and identity theft prevention;

      c.   Placing "freezes" and "alerts" with credit reporting agencies;

      d.   Spending time on the phone with or at a financial institution or government agency to dispute fraudulent charges and/or claims;

      e.   Contacting financial institutions and closing or modifying financial accounts; and

      f.   Closely reviewing and monitoring medical insurance accounts, bank accounts, payment card statements, and credit reports for unauthorized activity for years to come.

77.     Moreover, Plaintiff and Class Members have an interest in ensuring that their PII and PHI, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to,

making sure that the storage of data or documents containing sensitive and confidential personal, and/or financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

78.     Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their PII and PHI may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

79.     As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and are at a substantial and present risk of harm.

## VI.  CLASS ALLEGATIONS

80.     Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of the following nationwide class ("Nationwide Class"):

> **All persons in the United States whose personal information was compromised in the data breach publicly announced by Apria in May 2023.**

81.     Plaintiff Herrera also seeks certification of a California Subclass, defined as follows:

> **All California residents whose personal information was compromised in the data breach publicly announced by Apria in May 2023.**

82.     The Nationwide Class and California Subclass are collectively referred to herein as the "Class" unless otherwise stated.

83.     Excluded from the proposed Class are Defendant, including any entity in which Defendant has a controlling interest, is a subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded from the proposed Class are the judge to whom this case is assigned and any members of his or her judicial staff and immediate family.

84. Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division, or create and seek certification of additional classes, after having had an opportunity to conduct discovery.

85. This action is brought and may be maintained as a class action because there is a well-defined community of interest among many persons who comprise a readily ascertainable class. A well-defined community of interest exists to warrant class wide relief because Plaintiff and all members of the Class were subjected to the same wrongful practices by Defendant, entitling them to the same relief.

86. **Numerosity.** The Class Members are so numerous that the joinder of all members is impracticable. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

87. **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether and to what extent Defendant had a duty to protect the PII and PHI of Plaintiff and Class Members;

    b. Whether Defendant had a duty not to disclose the PII and PHI of Plaintiff and Class Members to unauthorized third parties;

    c. Whether Defendant had a duty not to use the PII and PHI of Plaintiff and Class Members for non-business purposes;

    d. Whether Defendant failed to adequately safeguard the PII and PHI of Plaintiff and Class Members;

    e. When Defendant actually learned of the Data Breach;

f.  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

g.  Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII and PHI had been compromised;

h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiff and Class Members;

k.  Whether Plaintiff and Class Members are entitled to actual damages, nominal damages, and/or statutory damages as a result of Defendant's wrongful conduct;

l.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

88.  **Typicality.** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class member, was compromised in the Data Breach.

89.  **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

90.     **Predominance.** Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

91.     **Superiority.** A Class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, treating this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

92.     Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

93.     Likewise, particular issues under Federal Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII and PHI;

b. Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

c. Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

d. Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII and PHI; and

e. Whether adherence to FTC data security recommendations and measures recommended by data security experts would have reasonably prevented the data breach.

94.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

**<u>COUNT I</u>**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

95.    Plaintiff incorporates by reference all previous allegations in paragraphs 1-94 as though fully set forth herein.

96.    Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

97.     Defendant had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII and PHI.

98.     Defendant had full knowledge of the sensitivity of the PII and PHI and the types of harm that Plaintiff and Class Members could and would suffer if the data were wrongfully disclosed.

99.     By assuming responsibility for collecting and storing this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII and PHI held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious time period and to give prompt notice to those affected in the case of a data breach.

100.    Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair. . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

101.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or Class Members.

102.    A breach of security, unauthorized access, and resulting injury to Plaintiff's and Class Members' PII and PHI was reasonably foreseeable, particularly considering Defendant's inadequate security practices, which includes sharing and/or storing the PII and PHI of Plaintiff and Class Members on its computer systems.

103.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII and PHI of Plaintiff and Class Members, the critical importance of providing adequate security of that data, and the necessity for encrypting all data stored on Defendant's systems.

104.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decisions not to comply with industry standards for the safekeeping of the PII and PHI of Plaintiff and Class Members, including basic encryption techniques freely available to Defendant.

105.    Plaintiff and Class Members had no ability to protect their PII and PHI that was in, and probably remains in, Defendant's possession.

106.    Defendant was able to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

107.    Defendant had and continue to have a duty to adequately disclose that the PII and PHI of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII and PHI by third parties.

108.    Defendant had a duty to comply with the industry standards set out above.

///

///

109.    Defendant, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII and PHI within Defendant's possession.

110.    Defendant, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII and PHI.

111.    Defendant, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiff and Class Members that the PII and PHI within Defendant's possession might have been compromised and precisely the type of information compromised.

112.    Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII and PHI to be compromised.

113.    As a result of Defendant's ongoing failure to notify Plaintiff and Class Members regarding the type of PII and PHI that has been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

114.    Defendant's breaches of duty caused Plaintiff and Class Members to suffer from identity theft, fraud, loss of time and money to monitor their finances for fraud, and loss of control over their PII and PHI.

115.    As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of present and continuing harm in that their PII and PHI, which is still in the possession of third parties, will be used for fraudulent purposes. Plaintiff and Class Members will need identity theft protection services and credit monitoring services for their respective lifetimes, considering the immutable nature of the PII and PHI at issue, which includes sensitive medical information.

116.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII and PHI of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The PII and PHI of Plaintiff and Class Members was stolen and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII and PHI, by adopting, implementing, and maintaining appropriate security measures.

117.    Plaintiff seeks the award of actual damages on behalf of themselves and the Class.

118.    In failing to secure Plaintiff's and Class Members' PII and PHI and promptly notifying them of the Data Breach, Defendant is guilty of oppression, fraud, or malice, in that Defendant acted or failed to act with a willful and conscious disregard of Plaintiff's and Class Members' rights. Plaintiff, therefore, in addition to seeking actual damages, seeks punitive damages on behalf of himself and the Class.

119.    Plaintiff seeks injunctive relief on behalf of the Class in the form of an order compelling Defendant to institute appropriate data collection and safeguarding methods and policies regarding customer information.

**COUNT II**
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

120.    Plaintiff incorporates by reference all previous allegations in paragraphs 1-94 as though fully set forth herein.

121.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies like Defendant of failing to use reasonable measures to protect PII and PHI.

122.     The FTC publications and orders also form the basis of Defendant's duty to the Class.

123.     Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and PHI and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI that it obtained and stored and the foreseeable consequences of a data breach of that data.

124.     Defendant's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

125.     Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

126.     Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class.

127.     As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**COUNT III**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

128.     Plaintiff incorporates by reference all previous allegations in paragraphs 1-94 as though fully set forth herein.

///

129.    Plaintiff and Class Members had a legitimate expectation of privacy to their PII and PHI and were entitled to the protection of this information against disclosure to unauthorized third parties.

130.    Defendant owed a duty to Plaintiff and Class Members to keep their PII and PHI confidential.

131.    Defendant intentionally failed to protect and released to unknown and unauthorized third parties the non-redacted and non-encrypted PII and PHI of Plaintiff and Class Members.

132.    Defendant allowed unauthorized and unknown third parties access to and examination of the PII and PHI of Plaintiff and Class Members, by way of Defendant's failure to protect the PII and PHI.

133.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII and PHI of Plaintiff and Class Members is highly offensive to a reasonable person.

134.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their PII and PHI to Defendant as part of their relationships with Defendant, but privately with an intention that the PII and PHI would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

135.    The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or

as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

136.    Defendant acted with intention and a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that their information security practices were inadequate and insufficient.

137.    Because Defendant acted with this knowing state of mind, it had noticed and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

138.    As a proximate result of the above acts and omissions of Defendant, PII and PHI of Plaintiff and Class Members was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer damages.

139.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PII and PHI maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

**COUNT IV**
**California Confidentiality of Medical Information Act**
**Cal. Civ. Code § 56, *et seq.***
**(On behalf of Plaintiff and the California Subclass)**

140.    Plaintiff incorporates by reference all previous allegations in paragraphs 1-94 as though fully set forth herein.

141.    Defendant is "a provider of health care," as defined in Cal. Civ. Code §56.05(m) and is therefore subject to the requirements of the CMIA, Cal. Civ. Code §56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b).

142.    At all relevant times, Defendant was a health care provider because it had the "purpose of maintaining medical information to make the information available to the individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manager his or her information, or for the diagnosis or treatment of the individual."

143.    As a provider of health care or a contractor, Defendant is required by the CMIA to ensure that medical information regarding patients is not disclosed or disseminated or released without patient's authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.36, and 56.101.

144.    As a provider of health care or a contractor, Defendant is required by the CMIA not to disclose medical information regarding a patient without first obtaining an authorization under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, and 56.104.

145.    Defendant is a person licensed under California under California's Business and Professions Code, Division 2. See Cal. Bus. Prof. Code § 4000, *et seq*.

146.    Plaintiff and Class Members are "patients" as defined in CMIA, Cal. Civ. Code §56.05(k) ("'Patient' means any natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains."). Furthermore, Plaintiff and Class Members, as patients and customers of Defendant, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j),

created, maintained, preserved, and stored on Defendant's computer network, and were patients on or before the date of the Data Breach.

147.    Defendant disclosed "medical information," as defined in CMIA, Cal. Civ. Code § 56.05(j), to unauthorized persons without first obtaining consent, in violation of Cal. Civ. Code § 56.10(a). The disclosure of information to unauthorized individuals in the Data Breach resulted from the affirmative actions of Defendant's employees, which allowed the hackers to see and obtain Plaintiff's and Class Members' medical information.

148.    Defendant negligently created, maintained, preserved, stored, and then exposed Plaintiff's and Class Members' individually identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j), including Plaintiff's and Class Members' first and last names, health insurance member ID numbers, dates of birth, addresses, dates of service, provider names, claim information, and group names and numbers, that alone or in combination with other publicly available information, reveals their identities. Specifically, Defendant knowingly allowed and affirmatively acted in a manner that allowed unauthorized parties to access and view Plaintiff's and Class Members' confidential Private Information.

149.    Defendant's negligence resulted in the release of individually identifiable medical information pertaining to Plaintiff and Class Members to unauthorized persons and the breach of the confidentiality of that information. Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff's and Class Members' medical information in a manner that preserved the confidentiality of the information contained therein, in violation of Cal. Civ. Code §§ 56.06 and 56.101(a).

150.     Defendant also violated Sections 56.06 and 56.101 of the CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

151.     Plaintiff's and Class Members' medical information was accessed, removed and viewed by hackers and other unauthorized parties during and following the Data Breach.

152.     Plaintiff's and Class Members' medical information that was the subject of the Data Breach included "electronic medical records" or "electronic health records" as referenced by Civil Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

153.     Defendant's computer systems did not protect and preserve the integrity of electronic medical information in violation of Cal. Civ. Code § 56.101(b)(1)(A). As a direct and proximate result of Defendant's above-noted wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, and violation of the CMIA, Plaintiff and the Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia,

   a.   present, imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud –risks justifying expenditures for protective and remedial services for which they are entitled to compensation,

   b.    invasion of privacy,

   c.    breach of the confidentiality of the PHI,

   d.    statutory damages under the California CMIA,

   e.    deprivation of the value of their PHI, for which there is well-established national and international markets, and/or,

f. the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

154. As a direct and proximate result of Defendant's wrongful actions, inaction, omission, and want of ordinary care that directly and proximately caused the release of Plaintiff's and Class Members' Private Information, Plaintiff and Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff's and Class Members' written authorization.

155. Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff's and Class Members' medical information in a manner that preserved the confidentiality of the information contained therein violated the CMIA.

156. Plaintiff's and the Class Members were injured and have suffered damages, as described above, from Defendant's illegal and unauthorized disclosure and negligent release of their medical information in violation of Cal. Civ. Code §§56.10 and 56.101, and therefore seek relief under Civ. Code §§ 56.35 and 56.36, which allows for actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorneys' fees, expenses and costs.

**COUNT V**
**Violation of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et. seq.***
**(On behalf of Plaintiff and the Class)**

157. Plaintiff incorporates by reference all previous allegations in paragraphs 1-94 as though fully set forth herein.

158. Plaintiff and Defendant are "persons" as defined by Cal. Bus. & Prof. Code § 17201.

159. The UCL prohibits "unlawful, unfair, or fraudulent business acts or practices."

160.    By failing to take reasonable precautions to protect the PII and PHI of Plaintiff and the Class, Defendant has engaged in "unlawful" and "unfair" business practices in violation of the UCL.

161.    First, Defendant engaged in "unlawful" acts or practices because it violated multiple laws, including the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq*.; the FTC Act; and the common law, all as alleged herein.

162.    Second, Defendant engaged in "unfair" acts or practices, including the following:

a.    Defendant failed to implement and maintain reasonable data security measures to protect the Class Members' PII and PHI. Defendant failed to identify foreseeable security risks and adequately maintain their data security considering the known risk of cyber intrusions, especially in light of the highly sensitive nature of the information which Defendant stored. Defendant's conduct, with little if any social utility, is unfair when weighed against the harm to the Class Members whose PII and PHI has been compromised.

b.    Defendant's failure to implement and maintain reasonable data security measures was contrary to legislatively declared public policy that seeks to protect consumers' personal information and ensures that entities entrusted with PII and PHI adopt appropriate security measures. These policies are reflected in various laws, including the FTC Act (15 U.S.C. § 45); and the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq*.).

c.    Defendant's failure to implement and maintain reasonable data security measures led to the substantial consumer injuries described herein. These injuries are not outweighed by countervailing benefits to consumers or competition. Moreover,

because consumers could not have reasonably known of Defendant's inadequate data security, consumers could not have reasonably avoided the harm that Defendant's conduct caused.

163. As a direct and proximate result of Defendant's acts of unlawful and unfair practices and acts, Plaintiff and the Class were injured and lost money or property and suffered the various types of damages alleged herein.

164. The UCL states that an action may be brought by any person who has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Plaintiff and the Class Members suffered injury in fact and lost money or property, including in the form of the loss of value of their breached PII and PHI, as a result of Defendant's unfair competition as set forth herein. PII and PHI are valuable which is demonstrated by the fact that Defendant's business is built in part by managing the PII and PHI of the Class.

165. Plaintiff and the Class are entitled to injunctive relief to address Defendant's past and future acts of unfair competition.

166. Plaintiff and the Class are entitled to restitution of money and property that Defendant obtained by means of unlawful, unfair, or fraudulent practices, and restitutionary disgorgement of all profits accruing to Defendant as a result of their unlawful and unfair business practices.

167. Plaintiff lacks an adequate remedy at law because the injuries here include an imminent risk of identity theft and fraud that can never be fully remedied through damages.

168. Further, if an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury. The risk of another such breach is real, immediate, and substantial. Plaintiff's

lack an adequate remedy at law that will reasonably protect them against the risk of such further breach.

169.     Plaintiff and the Class seek all monetary and non-monetary relief available to them under the UCL, including reasonable attorney's fees as allowed under Cal. Code Civ. Proc. §1021.5.

## COUNT VI
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

170.     Plaintiff incorporates by reference all previous allegations in paragraphs 1-94 as though fully set forth herein.

171.     Plaintiff and Class Members conferred a monetary benefit to Defendant by paying Defendant for its services.

172.     Defendant knew that Plaintiff and Class Members conferred a monetary benefit to Defendant when it accepted and retained that benefit.

173.     Defendant was supposed to use some of the monetary benefit provided to it from Plaintiff and Class Members to secure the PII and PHI belonging to Plaintiff and Class Members by paying for costs of adequate data management and security.

174.     Defendant should not be permitted to retain any monetary benefit as a result of its failure to implement necessary security measures to protect the PII and PHI of Plaintiff and Class Members.

175.     Defendant gained access to Plaintiff's and Class Members' PII and PHI through inequitable means because Defendant failed to disclose that it used inadequate security measures.

176.    Plaintiff and Class Members were unaware of the inadequate security measures and would not have provided their PII and PHI to Defendant had they known of the inadequate security measures.

177.    To the extent that this cause of action is pled in the alternative to the others, Plaintiff and Class Members have no adequate remedy at law.

178.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII and PHI is used; (iii) the compromise and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI of Plaintiff and Class Members; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

179.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

180.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds from the monetary benefit that it unjustly received from them.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, request judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class, and appointing Plaintiff and his counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII and PHI of Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

   i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

   ii.    requiring Defendant to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.   requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI for Plaintiff's and Class Members' respective lifetimes;

v.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII and PHI of Plaintiff and Class Members;

vi.   prohibiting Defendant from maintaining the PII and PHI of Plaintiff and Class Members on a cloud-based database;

vii.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

viii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix.   requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures;

x.   requiring Defendant to segment data by, among other things, creating firewalls and controls so that if one area of Defendant's network is compromised, hackers cannot gain access to portions of Defendant's systems;

xi.   requiring Defendant to conduct regular database scanning and securing checks;

xii. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xiii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv. requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal

identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvii.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.   For an award of damages, including actual, nominal, statutory, treble, consequential, and punitive damages, as allowed by law in an amount to be determined;

E.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.   For prejudgment interest on all amounts awarded; and

G.   Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

DATED: June 13, 2023                    Respectfully submitted,

*/s/ M. Anderson Berry*
 M. ANDERSON BERRY
 *aberry@justice4you.com*
 **CLAYEO C. ARNOLD**
 **A PROFESSIONAL CORPORATION**
 865 Howe Avenue
 Sacramento, CA 95825
 Telephone: (916) 239-4778
 Fax: (916) 924-1829

JASON WUCETICH
jason@wukolaw.com
**WUCETICH & KOROVILAS LLP**
222 N. Pacific Coast Highway, Suite 2000
El Segundo, CA 90245
Telephone: (310) 335-2001
Fax: (310) 364-5201

*Attorneys for Plaintiff Robert N. Herrera and the
Proposed Class*